UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CRYSTAL M. LATHAM,

                              Plaintiff,

        v.                                                **DECISION AND ORDER**
                                                          15-CV-131S
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Crystal M. Latham challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since October 29, 2011, due to gastritis/irritable bowel syndrome ("IBS") and a depressive disorder with anxiety. Plaintiff argues that her impairments have rendered her unable to work.  She therefore asserts that she is entitled to payment of disability and disability insurance benefits ("DDIB") as well as supplemental security income ("SSI") payments under the Act.

        2.      Plaintiff filed an application for DDIB and SSI benefits on June 19, 2012. The Commissioner denied both applications, after which Plaintiff timely filed a request for a hearing.  Pursuant to Plaintiff's request, ALJ Robert C. Dorf held an administrative hearing on June 17, 2013, at which Plaintiff appeared with counsel and testified, as did Andrew Pasternak, an impartial vocational expert.  The ALJ considered the case *de novo*, and on July 10, 2013, issued a decision denying Plaintiff's application for benefits. On December 17, 2014, the Appeals Council denied Plaintiff's request for review.

3.      Plaintiff filed the current civil action on February 13, 2015, challenging Defendant's final decision.[1]   On July 23, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 9).   Defendant filed a Motion for Judgment on the Pleadings on July 29, 2015. (Docket No. 10).   After full briefing, this Court deemed the motions submitted and reserved decision.   For the following reasons, Defendant's motion is granted and Plaintiff's is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.   See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.   See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

---

[1] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

must also include that which detracts from its weight." <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a <i>de novo</i> review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.   <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.   The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process, set forth above: (1) Plaintiff has not engaged in substantial gainful activity ("SGA") since the alleged onset of her disability (R. at 13);[2] (2) Plaintiff's severe impairments include gastritis/IBS and a depressive disorder with anxiety[3] (Id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 (R. at 14); (4)

---

[2] Citations to the underlying administrative record are designated as "R."
[3] Plaintiff's challenge to the ALJ's decision is limited to the handling of her mental impairments.

Plaintiff retains the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for occasional postural activities (Plaintiff is limited to simple, repetitive work, at low stress, defined as no decision making required; no judgment required; no numerical production quota work; occasional contact with public, co-employees, and supervisors; and, the job location should have a toilet accessible/available) (R. at 18); (5) Plaintiff is unable to perform any past relevant work (R. at 27); and, (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.) Ultimately, the ALJ concluded that Plaintiff was not disabled, as defined by the Act, at any time through the date of his decision. (R. at 29).

10.    Plaintiff challenges three elements of the ALJ's decision. First, Plaintiff argues that the ALJ failed to give any weight to her nurse practitioner's opinion. Next, she contends that the ALJ erred by failing to account for her treating psychologist's opinion (Dr. Baskin). Finally, Plaintiff argues that the ALJ erred in his RFC determination by failing to account for her limitations in maintaining a regular schedule.

11.    Plaintiff's first two arguments concern the ALJ's ultimate finding that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 27). Plaintiff argues that this determination, which chiefly relied on the ALJ's RFC determination, is erroneous, because the ALJ rejected two examining opinions in favor of Dr. Mangold's[4] internally inconsistent opinion. In particular, Plaintiff contends that the ALJ failed to properly

---

[4]    Dr. Mangold, a non-examining psychiatrist, who reviewed the medical evidence, opined that Plaintiff appeared to be "mentally capable of performing simple, competitive work in a low contact work setting." (R. at 394). Dr. Mangold memorialized his RFC assessment in a Psychiatric Review Technique Form. Plaintiff asserts that this ultimate RFC determination is inconsistent with Dr. Mangold's previous findings found within a Mental Residual Functional Capacity form. (R. at 394, 396-97).

weigh the medical opinions offered by her nurse practitioner, Nurse Pfalzer, and her treating psychologist, Dr. Baskin.

Nurse Pfalzer opined that Plaintiff was "extremely" impaired with regards to the following:

> "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and her "ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods." (R. at 370).

Plaintiff argues that, despite this debilitative prognosis, the ALJ disregarded Nurse Pfalzer's opinion without explaining his reasons for doing so.  While recognizing that a nurse practitioner is not an acceptable medical source, Plaintiff argues that the position is included among "other sources" whose opinions may be considered as to the severity of a claimant's impairment and ability to work.   20 C.F.R. § 416.913(d)(1). While an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, particularly when there is a treatment relationship with the claimant.  See White v. Comm'r of Soc. Serv., 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (holding that the ALJ erred in failing to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist's).

Plaintiff also argues that the ALJ, by failing to afford some weight and recognition to Nurse Pfalzer's use of "check-box" forms, substantially frustrated her ability to produce favorable evidence and caused a gap in the record, which the ALJ was then

obligated to more fully develop.   In sum, Plaintiff argues that the ALJ's failure to incorporate Nurse Pfalzer's opinion results in a RFC determination unsupported by substantial evidence.

Next, Plaintiff claims error in the ALJ's consideration of Dr. Baskin's opinion as it pertains to Plaintiff's ultimate RFC.   The ALJ concluded that the inconsistencies found within Dr. Baskin's evaluations of Plaintiff supported his decision to afford little weight to this particular evidence.   Dr. Baskin noted that Plaintiff, after a preliminary psychiatric test on her present condition, was "mildly" impaired in her attention, concentration, recent memory, and remote memory.  (R. at 375).  Yet Dr. Baskin, in his medical source statement of Plaintiff, prospectively opined that Plaintiff was "moderately" impaired in regards to the following: maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others and appropriately deal with stress.  (R. at 376).  Dr. Baskin further opined, in this medical source statement, that Plaintiff could not perform serial subtractions, forgot one out of three items after a five minute delay, and could only recite two digits backwards.  (R. at 375).  According to the ALJ, Dr. Baskin's findings are inconsistent and therefore not entitled to much weight.  (R. at 25).  Plaintiff argues that this is error.   She maintains that the deficiencies expressed by Dr. Baskin indicate serious degrees of impairment.

Having considered the parties' first two arguments and reviewed the record evidence, this Court finds no error in the ALJ's RFC determination, which primarily relied upon the opinion of Dr. Mangold.  In regards to Plaintiff's first argument, the ALJ correctly stated that Nurse Pfalzer, as a nurse practitioner, is not considered an

"acceptable medical source."  See Selinsky v. Comm'r of Soc. Sec., No. 08–cv–1363 (GLS/VEB), 2010 WL 2671502 at *4 (N.D.N.Y. June 14, 2010) (citing Gillies v. Astrue, No. 07-cv-517, 2009 WL 116150, at *6 (W.D.N.Y. Apr. 29, 2009) ("nurse practitioners are not necessarily considered to be acceptable sources of medical evidence")).  Social Security Regulation 06-3p ("treating physician rule") specifically states that the ALJ, in evaluating the opinion of "other sources," evaluates how well the source explains the opinion and whether the source presents evidence to support the opinion.  Banks v. Astrue, 955 F. Supp. 2d 178, 189-90 (W.D.N.Y. 2013).  Furthermore, the Second Circuit has consistently held that opinions rendered on "check-box" forms are often the ones entitled to little meaningful insight into the basis for the clinician's findings.  See Klodzinski v. Astrue, 274 F. App'x 72, 73 (2d Cir. 2008) (holding that a standardized multiple-choice form completed by a treating physician was only marginally helpful); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (stating that the standardized form was only marginally helpful).  Thus, the ALJ did not err when he disregarded Nurse Pfalzer's "check-box" form, which included no supplementary explanation or supporting evidence to corroborate her findings.  (R. at 369-72).

Furthermore, Plaintiff incorrectly argues the extent of the ALJ's duty to develop the administrative record.  The ALJ is under no duty to develop the administrative record where the available evidence is sufficient to establish a conclusion on a disability determination or the record is consistent regarding the various medical and non-medical opinions.  Cichocki v. Astrue, 534 F. App'x 71, 77 (2d Cir. 2013); see also Heagney-O'Hara v. Comm'r of Soc. Sec., No. 14–CV–6083–CJS, 2015 WL 860849, at *3 (W.D.N.Y. Feb. 27, 2015).  Here, as in Cichocki and Heagney-O'Hara, the ALJ was only

obligated to re-contact a medical provider, such as Nurse Pfalzer, if the record was inconsistent or insufficient to make a disability determination.

Here, the record is not inconsistent. Treatment counseling notes from Spectrum Health Services,[5] Plaintiff's assessed Global Assessment Functioning ("GAF") score of 60,[6] portions of Dr. Baskin's medical opinion,[7] and Plaintiff's own testimony regarding her daily living habits,[8] collectively corroborate and are consistent with Dr. Mangold's opinions. (R. at 17, 23, 26, 265, 274, 275, 284, 287, 297, 394, 469, 475, 479).

Moreover, these medical opinions, other source opinions, and personal testimony provide sufficient evidence to reach a disability determination. The ALJ therefore is under no duty to further develop the administrative record, as Plaintiff's whole medical history supports the ALJ's RFC decision. The RFC decision primarily relies on the opinion of Dr. Mangold, who states that Plaintiff is mentally capable of performing simple, competitive work in a low contact work setting. Nonetheless, sole reliance on Dr. Mangold's medical opinion is extensively supported by the aforementioned sources, who collectively opine that Plaintiff is only "mildly" limited with regards to her cognitive functioning. Thus, these sources, in conjunction with Dr. Mangold's opinion, constitute substantial evidence supporting the ALJ's decision. Furthermore, Plaintiff fails to recognize that Dr. Mangold is an expert in the evaluation of mental limitations in disability claims under the Act. 20 C.F.R. §§ 404.1527(e). Therefore, Dr. Mangold's

---

[5] Psychiatric Progress Notes of September 2012 and December 2012 noted that Plaintiff's memory and concentration were good; judgment remained intact; and, there were no homicidal or suicidal ideations, hallucinations, or delusions. Further, the Individualized Action Plan of March 18, 2013 noted that Plaintiff would continue to take prescribed medication and successfully employ effective coping measures to handle everyday stress. (R. at 465-94).

[6] A GAF score of 60 indicates a nearly-mild mental impairment.

[7] Dr. Baskin noted that Plaintiff, after a preliminary psychiatric test on her present condition, was "mildly" impaired in her attention, concentration, recent memory, and remote memory. (R. at 375).

[8] See infra p. 14.

expertise constitutes evidence which can be given greater weight, if his opinion is consistently supported by medical evidence of record. (Id.)  Therefore, consistent with the statutory rulings, the ALJ did not err by according greater weight to Dr. Mangold's expert opinion, which was extensively supported by evidence in the record. Consequently, this Court finds Plaintiff's first two arguments unpersuasive.  Substantial evidence supports the ALJ's RFC finding.

12.     Plaintiff's final argument is that the ALJ erred by failing to consider the medical opinion evidence regarding Plaintiff's inability to maintain a regular schedule.  In support of this contention, Plaintiff, unlike the ALJ, attributes significant weight to Dr. Mangold's Mental Residual Functional Capacity ("MRFC") form.  Dr. Mangold opined in the MRFC form that Plaintiff had "moderate" limitations in her ability to maintain a regular schedule.  (R. at 396-97).  Despite these noted limitations in the MRFC form, Dr. Mangold did not list the same degree of limitations in a subsequent Psychiatric Review Technique ("PRT") form, the document upon which the ALJ ultimately relied on to formulate Plaintiff's RFC.  (R. at 27-28).

Despite the inconsistency between the forms, Plaintiff maintains that the opinion encapsulated within the MRFC form must be considered when determining Plaintiff's ultimate RFC determination.  Plaintiff further argues that the opinions of Nurse Pfalzer and Dr. Baskin complement the opinion expressed in the MRFC form, thus establishing Plaintiff's inability to maintain a regular work schedule because of her mental impairments.  Plaintiff also contends that her domestic life is also compromised by her debilitating depressive disorder, effectively disrupting her ability to maintain a regular schedule.  (R. at 45-46, 55-56).  Likewise, counseling notes consistently document that

Plaintiff struggled to cope with social stressors, exhibited an agitated mood, and had trouble sleeping.  (R. at 469-79).  Collectively, Plaintiff stresses that it is reasonable to expect that these debilitating factors frustrate one's ability to maintain a regular schedule.

Plaintiff contends that her inability to maintain a regular schedule would precipitate expected absenteeism from work.  See Gannett v. Colvin, No. 3:13–CV–717, 2014 WL 7345694, at *8 (N.D.N.Y. Dec. 23, 2014) (quoting Beck v. Colvin, No. 6:12–CV–06495(MAT), 2013 WL 5533571, at *6 (W.D.N.Y. Oct. 7, 2013) (noting that vocational experts consistently attest to the fact that "missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance.")

Plaintiff contends that the ALJ erred by failing to recognize this limitation or explain why it was not included in her RFC.  Alternatively, Plaintiff argues that if the ALJ openly rejected the unanimous medical opinion evidence regarding this particular "moderate" limitation, he was required to provide an "overwhelmingly compelling" justification.  See Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (holding that a critique of uncontradicted medical evidence by non-physicians must be overwhelmingly compelling to be valid).

Having considered the parties' arguments and reviewed the record evidence, this Court finds no merit in Plaintiff's argument that the ALJ rejected unanimous medical opinion evidence suggesting at least a "moderate" limitation in Plaintiff's ability to maintain a regular schedule.  Although there may be some evidence that Plaintiff is disabled under the Act, there is substantial evidence to support the ALJ's determination

that she is not.  Therefore, "the Commissioner's findings must be upheld."  <u>McIntyre v.</u>

<u>Colvin</u>, 758 F.3d 146, 149 (2d Cir. 2014).

First, social security regulations provide that the MRFC form is merely a guideline

to assist a physician in deciding the presence and degree of a claimant's functional

limitations; most importantly, this form does not constitute a RFC determination.  <u>See</u>

SSR 96-8p (stating that the opinions noted on the MRFC form are not a RFC

assessment). Therefore, Dr. Mangold's medical opinions expressed on the MRFC form

are not dispositive of Plaintiff's RFC determination.  As a result, this Court affirms the

ALJ's use of the PRT form, which contained Dr. Mangold's ultimate RFC conclusion that

Plaintiff is capable of performing simple, competitive work in a low-contact setting.

Furthermore, the ALJ was within his province to bifurcate portions of Dr. Baskin's

medical evidence, accepting opinions that were consistent with the record and rejecting

other portions that were exaggerated and inconsistent when compared to the medical

record as a whole.  <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002); <u>Pines v.</u>

<u>Comm'r of Soc. Sec.</u>, No. 13-cv-6850-AJN-FM, 2015 WL 872105, at *3 (S.D.N.Y. Mar.

2, 2015); <u>Crossman v. Comm'r of Soc. Sec.</u>, No. 3:14–CV–1294 (ATB), 2015 WL

5943506, at *11-13 (N.D.N.Y. Oct. 13, 2015).  Dr. Baskin opined, consistent with the

complete medical record, that Plaintiff would have minimal to no limitations in being able

to follow and understand simple directions and instructions and perform simple tasks

independently, characteristics common to performing simple, competitive work in a low-

contact setting.  (R. at 376).  The ALJ may afford great weight to this particular portion

of Dr. Baskin's testimony, which is consistent with the entire record.  <u>Veino</u>, 312 F.3d at

588; <u>Pines</u>, 2015 WL 872105, at *3; <u>Crossman</u>, 2015 WL 5943506, at *11-13.

On the other hand, Dr. Baskin subsequently opined that Plaintiff would have the following "moderate" limitations: maintaining attention and concentration; maintaining a regular schedule; learning new tasks; performing complex tasks; making appropriate decisions; relating adequately with others; and appropriately dealing with dress.  (R. at 376).  This Court notes that not only are these findings inconsistent with Dr. Baskin's previous medical opinions, but this evidence is inconsistent with the other medical and non-medical opinions regarding Plaintiff's alleged mental limitations.  (R. at 25, 376).  As previously stated, due to these inconsistencies, the ALJ was within his discretion to separate portions of Dr. Baskin's medical evidence and only accept opinions that were consistent with the record as a whole.

Furthermore, there is no error in the ALJ's decision to afford little weight to Plaintiff's testimony.  Her testimony is markedly inconsistent, as exhibited through counseling notes as well as Plaintiff's own contradictory statements.  For example, Plaintiff's treatment at Spectrum Human Services consistently revealed that Plaintiff had minimal deficits in attention and concentration. This evidence undermines Plaintiff's testimony that she was plagued by "moderate" limitations in maintaining attention and concentration.  (R. at 25, 469, 475, 475).

This Court also finds Plaintiff's allegations of disabling limitations not fully credible.  Plaintiff testified to the following: she is able to do all activities of daily living by herself (R. at 376); she is the sole caretaker of her 8-year-old daughter (R. at 211); she assists her roommate in taking care of her roommate's 3-year-old daughter (R. at 53); she drives, shops, and handles money (R. at 214); she travels alone (R. at 213); she cooks (R. at 212); and she plays video games and watches television (R. at 214).  Thus,

Plaintiff's lifestyle, characterized by diverse activities that she consistently performs on a daily basis, is incongruous with her claim that she has a significant "moderate" impairment in her ability to maintain a regular schedule.

13.     After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence, medical opinions, and testimony contained therein.   This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.   Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.


IT  HEREBY  IS  ORDERED,  that  Defendant's  Motion  for  Judgment  on  the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:  October 16, 2016
          Buffalo, New York

                                                            /s/William M. Skretny
                                                          WILLIAM M. SKRETNY
                                                       United States District Judge